# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:18-CV-00131-KDB

| | |
|---|---|
| **DAWN MICHELLE RAMSEY,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **ANDREW M. SAUL, Commissioner, Social Security Administration,**[1] | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Dawn Michelle Ramsey's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 13), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Ms. Ramsey applied for disability benefits on June 5, 2013. (Tr. at 79, 90).[2] Her application was initially denied on August 21, 2013 (Tr. at 107-08) and again upon reconsideration on

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

February 5, 2015 (Tr. 145-46). After conducting a hearing on March 6, 2017, the Administrative Law Judge ("ALJ") denied her application in a decision dated April 26, 2017. (Tr. at 18-30). The Appeals Council denied her request for review. (Tr. at 1-3). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Ramsey has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

At step one, the ALJ found that Ms. Ramsey had not engaged in substantial gainful activity since January 1, 2000. (Tr. at 20, Finding 2).[3] At step two, the ALJ found that Ms. Ramsey had the following severe impairments: obesity, affective disorder, and anxiety disorder. (Tr. at 20, Finding 3). The ALJ considered Ms. Ramsey's impairments under listings 12.04 and 12.06 at step three and found that they did not meet or medically equal either listing. (Tr. at 21-22).

The ALJ, at step four, found that Ms. Ramsey has the residual functional capacity ("RFC") to perform medium work with the following limitations:

> She can lift/carry/push/pull 25 lbs. frequently, and 50 lbs. occasionally. She is able to sit for 6 hours, stand for 6 hours, and walk for 6 hours each in an 8-hour workday with regular breaks. She can occasionally climb ladders, frequently crouch, and frequently crawl. She needs to avoid concentrated exposure to hazards. She can maintain concentration, persistence and pace for two-hour periods for simple, routine, repetitive tasks and instructions. She can have occasional interaction with the general public, and frequent interaction with co-workers or supervisors.

(Tr. at 22-23).

---

[3] The ALJ followed the required five-step sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

In determining Ms. Ramsey's RFC, the ALJ considered several doctors' opinions, including that of Dr. Bierrenbach, Ms. Ramsey's treating doctor. (Tr. at 25-27). The ALJ further found that while Ms. Ramsey is unable to perform any past relevant work, considering her age, education, work experience, and RFC, she can perform other jobs that exist in significant number in the national economy. (Tr. at 28). The vocational expert (VE) testified that Ms. Ramsey would be able to perform jobs such as a night cleaner, production helper, or hand packer. (Tr. at 29).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Ms. Ramsey argues that the ALJ's RFC determination is deficient in two ways. First, she argues that the "RFC determination is not supported by substantial evidence because the ALJ improperly rejected the opinion of Plaintiff's long-time treating physician, Dr. Ricardo Bierrenbach." (Doc. No. 10, at 6). Second, she argues the "RFC determination is not supported by substantial evidence where, after relying on the opinion of Dr. Conroy, she failed to account for the additional qualifications imposed by that opinion." (Doc. No. 10, at 6).

A. The ALJ's decision to give Dr. Bierrenbach's opinion partial weight is supported by substantial evidence on the record as a whole.

Because Ms. Ramsey's claim was filed prior to March 27, 2017, the treating physician rule applies. Under both the Commissioner's Regulations and Fourth Circuit law, a treating physician's opinion is entitled to controlling weight only "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see* 20 C.F.R. § 404.1527(d)(2) (2002). Therefore, "if a physician's opinion is not supported by clinical evidence

or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)).

After evaluating Dr. Bierrenbach's opinion and the record, the ALJ accorded Dr. Bierrenbach's opinion partial weight because "his opinions are not entirely consistent with the treatment record." (Tr. at 25). Ms. Ramsey argues the ALJ failed to properly explain why Dr. Bierrenbach's opinion was not given either controlling weight or significant weight. (Doc. No. 10, at 6, 12). This Court's review shows the record adequately supports the ALJ's decision to attribute partial weight to Dr. Bierrenbach's opinion.

First, the ALJ did not completely reject Dr. Bierrenbach's assessment. The RFC determination accounts for some of the marked limitations Dr. Bierrenbach found in his assessment. For example, in July 2013 Dr. Bierrenbach found marked limitations in understanding and remembering detailed instructions (Tr. at 542), carrying out detailed instructions (Tr. at 542), maintaining attention and concentration for *extended* periods (Tr. at 542), and working in coordination with or in proximity to others without being distracted by them (Tr. at 543). The ALJ's RFC determination included the following limitations: limited periods of understanding and concentration, carrying out simple and routine instructions, and occasional interaction with the general public. (Tr. at 22-23).

Second, the ALJ stated that Dr. Bierrenbach's opinion was only afforded partial weight because his opinion was not consistent with his treatment record. (Tr. at 25). Specifically, the ALJ cited to Dr. Bierrenbach's progress note from August 7, 2013, only a week after his mental capacity assessment recording the marked limitations, which indicated that Ms. Ramsey's mood was stable, she had good attention, and had a GAF score of 50. (Tr. at 25, 544, 558).

Ms. Ramsey argues that this single treatment note is insufficient to support the ALJ's decision to give Dr. Bierrenbach's opinion partial weight. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotations omitted) (citation omitted). "While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." *Brewer v. Astrue*, No. 7:07-cv-00024, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing to *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Dr. Bierrenbach's other treatment notes indicate that Ms. Ramsey's mental health was not as severe as the July 2013 mental assessment might suggest. A review of the record shows that out of approximately 30 visits with Dr. Bierrenbach, Ms. Ramsey denied depression symptoms 19 times (Tr. at 558-60, 564, 566, 572-76, 578-85, 588) and Dr. Bierrenbach recorded no signs of depression or mood elevation 24 times (Tr. at 559-60, 562-63, 565-67, 570-85, 588). Dr. Bierrenbach did not always record notes on anxiety, but when he did, over half of the time Ms. Ramsey denied anxiety symptoms or said it was controlled or improved. (Tr. at 563-64, 568, 570, 572-74, 580, 583, 584). By Ms. Ramsey's own brief in many of those visits with Dr. Bierrenbach, Ms. Ramsey often reported improved symptoms (Tr. 590, 588, 580, 579, 574, 570, 560) or stable moods (Tr. 583 (feeling "pretty good"), 581 (feeling "fine"), 578 ("stable mood"), 572-73 ("stable mood"), 570 ("stable mood"), 565 ("stable mood"), 567 ("stable mood"), 566 ("stable mood"), 564 ("stable mood"), 563 (feeling "fine"),  559 ("stable mood"), 592 ("stable mood") & Doc. No. 10, at 9-10). Given these inconsistencies between Dr.

Bierrenbach's July 2013 assessment and his own progress notes, there is substantial evidence supporting the ALJ's decision not to give controlling weight or significant weight to his opinion.[4]

Third, other opinion evidence in the record supports the ALJ's finding to give Dr. Bierrenbach's assessment only partial weight. Two state-agency psychological consultants, Dr. Skoll and Dr. Salmony, gave opinions consistent with the ALJ's RCF determination. (Tr. at 27, 124-26, 101-03). Additionally, Dr. Conroy's opinion acknowledges different limitations than those in Dr. Bierrenbach's July 2013 assessment once Ms. Ramsey's depression is controlled. (Tr. at 613). Ms. Ramsey frequently points to Dr. Pardoll's opinion in her brief, but Dr. Pardoll's opinion is speculative and the ALJ had reason to afford it only partial weight. *See Guest v. Colvin*, No. 1:15-cv-00776, 2016 WL 40007612, at *5 (M.D.N.C. July 26, 2016) (holding the ALJ did not err in his decision to discount a doctor's opinion for being speculative and citing to various cases that have held the same).

B. There is substantial evidence in the record to support the ALJ's decision to rely on Dr. Conroy's opinion.

Dr. Conroy opined that "once [Ms. Ramsey's] depression has improved she would be able to manage a simple, routine position in a low stress environment, in such a setting, she would be able to follow directions and perform simple, routine tasks consistent with her intellectual level." (Tr. at 26). The ALJ gave Dr. Conroy's opinion partial weight and agreed that Ms. Ramsey is limited to performing simple, routine, repetitive tasks. (Tr. at 26).

Ms. Ramsey argues that the ALJ erred by relying on Dr. Conroy's opinion without addressing the qualification that Ms. Ramsey's depression must first improve before she can

---

[4] Defendant makes a convincing argument that because Dr. Bierrenbach used a check-box form, his opinion is entitled to little weight. (Doc. No. 14, at 5-6). However, because the ALJ did not cite that as a reason for giving partial weight to Dr. Bierrenbach's opinion, the Court will not address it.

manage a simple, routine position. (Doc. No. 10, at 12-14). The Court concludes that substantial evidence supports the weight the ALJ gave to Dr. Conroy's opinion.

Ms. Ramsey admitted to Dr. Conroy that she functions much better on her medication. (Tr. at 610). Despite being off her medication when visiting Dr. Conroy, she still received a relatively good prognosis. (Tr. at 613) ("relatively good); *see, e.g.*, Tr. at 569 (recording that the one time Ms. Ramsey's GAF score fell below 50 in her approximately 30 visits with Dr. Bierrenbach was when she had stopped taking medication). During her visit with Dr. Conroy, Ms. Ramsey also indicated that she was getting treatment at Blue Ridge Community Health in two weeks (Tr. at 610) and that she was open to resuming mental health treatment (Tr. at 613). At her visit at Blue Ridge Community Health, the assessment and plan show that she was planning to restart Lexapro, Quetiapine, and Vistaril for her depression and anxiety. (Tr. at 781).

Thus, the record indicates that Ms. Ramsey's depression could be adequately controlled with medication, that her depression did improve when she was taking medication, and that she was planning on resuming medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Given this, there is substantial evidence to support the ALJ's decision to rely on Dr. Conroy's opinion and give it partial weight.

### IV. CONCLUSION

A reasonable mind would find that the evidence is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED.**

**SO ORDERED.**

Signed: October 9, 2019

Kenneth D. Bell
United States District Judge